| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
|---|---|---|
| COUNTY OF CHARLESTON | ) | |
| Stanley Brown, | ) | CIVIL ACTION COVERSHEET |
| Plaintiff | ) | 2011- CP - 10 - 1033 |
| vs. | ) | |
| The City of Charleston, et al., | ) | |
| Defendant(s) | ) | |

Submitted By: Gregg Meyers
Address: 1 Poston Road Suite 110 Charleston SC 29407

SC Bar #9908
Telephone # 843-556-025
Email: attygm@gmail.com

NOTE: The cover sheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated. A copy of this cover sheet must be served on the defendant(s) along with the Summons and Complaint.

## DOCKETING INFORMATION (Check all that apply)

*If Action is Judgment/Settlement do not complete*

☒ **JURY TRIAL** demanded in complaint.     ☐ **NON-JURY TRIAL** demanded in complaint.
☐ This case is subject to **ARBITRATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☒ This case is subject to **MEDIATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR (certificate attached).

## NATURE OF ACTION (Check One Box Below)

| Contracts | Torts - Professional Malpractice | Torts – Personal Injury | Real Property |
|---|---|---|---|
| ☐ Constructions (100) | ☐ Dental Malpractice (200) | ☐ Assault/Slander/Libel (300) | ☐ Claim & Delivery (400) |
| ☐ Debt Collection (110) | ☐ Legal Malpractice (210) | ☐ Conversion (310) | ☐ Condemnation (410) |
| ☐ Employment (120) | ☐ Medical Malpractice (220) | ☐ Motor Vehicle Accident (320) | ☐ Foreclosure (420) |
| ☐ General (130) | ☐ Notice/ File Med Mal (230) | ☐ Premises Liability (330) | ☐ Mechanic's Lien (430) |
| ☐ Breach of Contract (140) | ☐ Other (299) | ☐ Products Liability (340) | ☐ Partition (440) |
| ☐ Other (199) | | ☐ Personal Injury (350) | ☐ Possession (450) |
| | | ☐ Wrongful Death (360) | ☐ Building Code Violation (460) |
| | | ☒ Other (399) | ☐ Other (499) |

| Inmate Petitions | Judgments/Settlements | Administrative Law/Relief | Appeals |
|---|---|---|---|
| ☐ PCR (500) | ☐ Death Settlement (700) | ☐ Reinstate Driver's License (800) | ☐ Arbitration (900) |
| ☐ Sexual Predator (510) | ☐ Foreign Judgment (710) | ☐ Judicial Review (810) | ☐ Magistrate-Civil (910) |
| ☐ Mandamus (520) | ☐ Magistrate's Judgment (720) | ☐ Relief (820) | ☐ Magistrate-Criminal (920) |
| ☐ Habeas Corpus (530) | ☐ Minor Settlement (730) | ☐ Permanent Injunction (830) | ☐ Municipal (930) |
| ☐ Other (599) | ☐ Transcript Judgment (740) | ☐ Forfeiture (840) | ☐ Probate Court (940) |
| | ☐ Lis Pendens (750) | ☐ Other (899) | ☐ SCDOT (950) |
| | ☐ Other (799) | | ☐ Worker's Comp (960) |
| | | | ☐ Zoning Board (970) |
| | | | ☐ Administrative Law Judge (980) |
| | | | ☐ Public Service Commission (990) |
| | | | ☐ Employment Security Comm (991) |
| | | | ☐ Other (999) |

| Special/Complex /Other | | |
|---|---|---|
| ☐ Environmental (600) | ☐ Pharmaceuticals (630) | |
| ☐ Automobile Arb (610) | ☐ Unfair Trade Practices (640) | |
| ☐ Medical (620) | ☐ Out-of-State Depositions (650) | |
| ☐ Other (699) | | |

Submitting Party Signature: *Gregg Meyers*     Date: 1·27·11

**Note:** Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.



STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS
COUNTY OF CHARLESTON ) CASE. 11-CP-10-_____

Stanley Brown, )
)
Plaintiff, )
)
vs. )
)
City of Charleston; )
Justin Kursch, John L. Moore, )        Jury Trial Requested
Brian C. Bunn, each sued individually; )
the Medical University of South Carolina, )
Jeffrey Bush, M.D., sued in his individual )
capacity, )
Al Cannon, Sheriff of Charleston County, )
Nurse Phillips, Karyn Houston-Haynes, )
Kenneth Pool, Elijah McPherson, )
William J Linane IV, Shawanna Johnson, )
and Thomas Gregg, each sued individually, )
and Charleston County, )
)
Defendants. )
_____ )

**Summons**

TO:    City of Charleston
       Justin Kursch
       John L. Moore
       Brian C. Bunn
       The Medical University of South Carolina,
       Jeffrey Bush, M.D.
       Al Cannon, Sheriff of Charleston County
       Nurse Phillips
       Karyn Houston-Haynes
       Kenneth Pool
       Elijah McPherson
       William J Linane IV
       Shawanna Johnson
       Thomas Gregg
       Charleston County

       YOU ARE HEREBY SUMMONED and required to answer the complaint in this

action. A copy of the complaint is served upon you with this summons.

Your answer to the complaint is to be served upon the attorney for the plaintiff at 1 Poston Road Suite 110, Charleston SC 29407.

According to the South Carolina Rules of Civil Procedure, which govern litigation, you are required to appear and defend yourself in this action by making and serving an answer to this complaint within thirty (30) days after the complaint is served upon you. The thirty days begin to run from the date after this summons and complaint are served upon you; the date the service is made is excluded.

If within that time you fail to appear and defend as you are required to do by the Rules of Civil Procedure, the plaintiff in this action shall apply to the Court for the relief demanded in this Complaint and judgment by default will be rendered against you for the relief demanded in the complaint.

Respectfully submitted,

Gregg Meyers
1 Poston Road Suite 110
Charleston SC 29407

Attorney for the Plaintiff

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS
COUNTY OF CHARLESTON ) CASE. 11-CP-10-_____

Stanley Brown,                                          )
                                                       )
      Plaintiff,                                      )
                                                       )
   vs.                                            )
                                                       )
City of Charleston;                                    )
Justin Kursch, John L. Moore,                          )      Jury Trial Requested
Brian C. Bunn, each sued individually;                 )
the Medical University of South Carolina,              )      Deprivation of Civil Rights
Jeffrey Bush, M.D., sued in his individual             )      Negligence (SC Torts Claims Act)
capacity,                                              )
Al Cannon, Sheriff of Charleston County,               )
Nurse Phillips, Karyn Houston-Haynes,                  )
Kenneth Pool, Elijah McPherson,                        )
William J Linane IV,  Shawanna Johnson,                )
and Thomas Gregg, each sued individually,              )
and Charleston County,                                 )
                                                       )
    - Defendants.                                   )
_____



# Complaint

    1.  This is an action under state and federal law for money damages and injunctive relief.  It is brought pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988, the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and under the Constitution and laws of South Carolina.

    2.  The case arises from an arrest of Stanley Brown in 2010 by City of Charleston police officers named as defendants, and his ensuing medical care at MUSC and the Charleston County Detention Center.

    3.  Before his February 1, 2010 arrest, Mr. Brown was physically capable of walking, running, and otherwise controlling his legs.

1

4.   As a result of that 2010 arrest and the events set forth in this complaint, Mr. Brown is irrevocably paralyzed below his upper torso.

5.   The City of Charleston is a political entity within Charleston County authorized to sue and be sued. Among other things, it operates a police force. It is referred to in this complaint as the City. Unless this complaint is amended to allege otherwise, the City is sued for injunctive relief only.

6.   Al Cannon is the Sheriff of Charleston County. In this complaint, he is referred to s the Sheriff. The Charleston County Detention Center, referred to in this complaint as the Detention Center, is operated by the Sheriff of Charleston County. Unless this complaint is amended to allege otherwise, the Sheriff is sued for injunctive relief only.

7.   At all times pertinent to this complaint, Justin Kursch, J.L. Moore, and B.C. Bunn, each sued individually, were police officers with the City of Charleston who had contact with Stanley Brown on February 1, 2010. When referred to collectively, they are identified as "the CPD defendants." The City of Charleston Police Department is referred to in this complaint as the CPD.

8.   The Medical University of South Carolina is an entity providing medical care in South Carolina created by, and operated by, the State of South Carolina. It is referred to in this complaint as MUSC. As is alleged in more detail below, it is sued for injunctive relief, and in the alternative for damages.

9.   Jeffrey Bush, M.D. is a medical doctor who works in the emergency room of MUSC, and was on duty the night of the events related in this complaint. He oversaw the care of Stanley Brown. He is sued in the alternative for damages.

2

10. Nurse Phillips, Kenneth Pool, Elijah McPherson, William J Linane IV, Shawanna Johnson, and Thomas Gregg, each sued individually, are employees of the Sheriff at the Charleston County Detention Center. Each had contact with Stanley Brown on February 1, 2010. They are referred to collectively as the deputies.

11. Charleston County is a political subdivision of South Carolina, authorized by statute to sue and be sued.

Factual Background

12. Sunset on February 1, 2010 in Charleston was 5:52 p.m.

13. On February 1, 2010, at about 7 p.m., defendants Kursch, Bunn, and Moore were on patrol in Charleston for the CPD.

14. Defendant Moore was alone in marked police cruiser 107.

15. Defendants Bunn and Kursch were in marked police cruiser 170, with Kursch driving.

16. Mr. Brown was on the street with another person. Defendant Moore's car came in proximity of Mr. Brown.

17. Defendant Moore attempted to initiate a "person stop" on Mr. Brown.

18. Defendant Moore was not stopping Mr. Brown because he had any particular information about Mr. Brown. Defendant Moore "wanted to get out and talk to him."

19. Defendant Moore shone the squad car's spotlight on Mr. Brown.

20. When defendant Moore shone the spotlight on Mr. Brown, defendants Kursch and Bunn were about 25 feet away from defendant Moore.

3

21. At the time, Mr. Brown was physically capable of running, and he responded to the spotlight by running.

22. Defendant Moore left cruiser 107 and began to chase Mr. Brown on foot.

23. Defendant Kursch moved his car in front of Mr. Brown and stopped it, to try to stop Mr. Brown and to allow defendant Bunn to get out.

24. When defendant Kursch moved his car in front of Mr. Brown, Mr. Brown reversed the direction in which he was running.

25. Defendant Bunn left cruiser 170 and also began to chase Mr. Brown on foot. Both defendants Moore and Bunn were chasing Mr. Brown on foot.

26. Defendant Moore called out to Mr. Brown to stop or he would use his taser on Mr. Brown.

27. Upon officer Moore's warning, Mr. Brown put his arms in the air and stopped, as he had been commanded to do.

28. Defendant Bunn collided with Mr. Brown when Mr. Brown stopped.

29. Medical personnel would later submit a bill for services that identified an injury to Mr. Brown from that pedestrian collision.

30. Mr. Brown then voluntarily went to the ground, to comply with the instructions he was given by the defendant officers at the scene, and because he had been injured. As testified to by Sergeant Roger Owen of the CPD, Mr. Brown "laid down on the ground."

31. The place where Mr. Brown went to the ground was in the street, directly in front of 17 Hanover Street, in Charleston.

4

32.  On the asphalt of the street, defendant Bunn was on Mr. Brown's left and defendant Moore was on Mr. Brown's right.  Defendant Kursch also got on Mr. Brown's left side.

33. Mr. Brown shouted that he had asthma.

34. Mr. Brown was handcuffed.

35. Defendant Kursch contends that a "tussle" was involved in getting Mr. Brown into handcuffs.

36. Mr. Brown made no other resistance.

37. The other person who had been with Mr. Brown when defendant Moore activated his spotlight on Mr. Brown observed one of the defendant CPD officers strike Mr. Brown's neck with his forearm, while Mr. Brown was on the asphalt of the street before 17 Hanover Street.

38. It is conceded by defendant Kursch that defendant Moore struck Mr. Brown with "a knee strike to his right side" as Mr. Brown was on the ground. Supposedly intended for "the upper thigh area," the knee strike hit Mr. Brown "in the lower rib cage."  That knee strike was documented by the police in a "use of force report" made February 1.

39. The defendant CPD officers denied making any blows to Mr. Brown's neck as observed by the witness at the scene.

40. Mr. Brown was place under arrest.

41. Defendants Kursch and Moore picked Mr. Brown up and "escorted him" to cruiser 170.

42. When Mr. Brown was picked up, the CPD defendants observed that on the pavement underneath Mr. Brown was what would be later identified as narcotics.

5

43. As defendants Moore and Kursch moved Mr. Brown to the car, defendant Kursch described Mr. Brown as "plodding." Defendant Kursch testified, "[W]e were carrying most of his [Mr. Brown's] weight, however his feet were moving like he was trying to walk."

44. Mr. Brown was taken to the rear of cruiser 170 to be searched before being placed into cruiser 170.

45. Defendant Kursch testified that "As soon as we took him [Mr. Brown] to the car he became unresponsive." As described by defendant Kursch, Mr. Brown lost muscle control, wasn't able to stand by himself, and had only "a very shallow pulse."

46. EMS was called for Mr. Brown at the direction of defendant Kursch.

47. While waiting for EMS, Mr. Brown was "laid on his side."

48. EMS arrived.

49. EMS recorded Mr. Brown as "responsive only to deep pain."

50. Mr. Brown's head was secured by EMS in a "full spineboard" and with "full CPSINE precautions."

51. None of the COD defendants disclosed to EMS that Mr. Brown had sustained a collision, a forearm blow to the neck, a knee to his back, or any other physical trauma. That information was apparently withheld from EMS. According to the EMS records, Mr. Brown's unresponsiveness was explained by the CPD defendants as possibly secondary to Mr. Brown having ingested narcotics. Trauma was completely, and falsely, denied by the CPD defendants, and that false information was then recorded by EMS.

52. Defendants Kursch, Moore, and Bunn falsely informed EMS that Mr. Brown had "collapsed" and they did not know "how hard he fell when he collapsed."

53. EMS transported Mr. Brown to MUSC.

6

54. The CPD defendants went to MUSC with EMS. Mr. Brown was placed in room 9 of the MUSC emergency room.

55. Defendant Jeffrey Bush, M.D., was the "Attending physician" for Mr. Brown in the MUSC Emergency Department.

56. According to the CPD defendants, "at the time the report to MUSC was completed," Mr. Brown was described as "in stable condition."

57. Mr. Brown was treated at MUSC on February 1, but no examination was made of his vertebrae.

58. MUSC records indicate that on February 1, Mr. Brown had full motor control, had sustained no loss of consciousness or head injury. That history was apparently provided to MUSC by the CPD defendants, and it was false.

59. MUSC cleared Mr. Brown for incarceration in the Charleston county Detention Center. CPD defendants Moore and Bunn transported Mr. Brown to the Detention Center.

60. Upon arrival at the Detention Center, Mr. Brown was unable to move his legs.

61. The CPD defendants interpreted Mr. Brown's paralysis as refusal to comply with instructions.

62. The deputy defendants interpreted Mr. Brown's paralysis as refusal to comply with instructions and that Mr. Brown was "making himself dead weight."

63. The deputy defendants Nurse Phillips, McPherson, Linane, Pool, and Johnson assisted the CPD defendants in physically moving Mr. Brown to an "emergency restraint chair" and into the Detention Center.

7

64. Detention Center defendant identified as Nurse Phillips approved Mr. Brown being moved by McPherson, Linane, Pool, Johnson, Moore and Bunn after reviewing the clearance given Mr. Brown by MUSC.

65. Defendant Phillips relied on the clearance given Mr. Brown by MUSC, and the silence by officers Bunn and Moore who were each aware of the actual circumstances of Mr. Brown's arrest, and who were also each aware that Mr. Brown's condition had deteriorated from when he was taken to MUSC. As a result, Nurse Phillips determined Mr. Brown did not need to be placed under observation at the Detention Center.

66. Defendant Nurse Phillips was not told by Moore or Bunn that Mr. Brown has sustained a collision, a forearm blow to the neck, a knee to his back, or any other physical trauma. That information was apparently withheld from defendant Nurse Phillips.

67. At 10:35 p.m. on February 1, Mr. Brown was in the Detention Center. At that time, he was unable to walk.

68. In the Detention Center on February 1, 2010, Mr. Brown was given a "Medical Screening" by defendant Thomas Gregg. Neither of CPD defendants Moore nor Bunn related to Thomas Gregg that Mr. Brown had sustained a collision, a forearm blow to the neck, a knee to his back, or any other physical trauma in the course of his arrest. That information was withheld from Thomas Gregg.

69. Mr. Brown spent the night in the Detention Center.

70. The next morning, February 2, 2010, Mr. Brown still could not walk.

8

71. A "clinical nursing evaluation" was done on Mr. Brown at 8:10 a.m. on February 2, 2010 by an LPN named P. Simpson. LPN recorded that Mr. Brown complaining he had "no feeling" from the waist down.

72. At 9:38 a.m. on February 2, Mr. Brown was taken from the Detention Center back to MUSC, where his cervical fractures were for the first time examined and treatment was attempted.

73. Mr. Brown is now permanently paralyzed below his upper chest.

**For a First Cause of Action: Deprivation of Rights Under 42 USC §§ 1981 and 1983**
(Count 1 Against Defendants City of Charleston, Kursch, Moore, and Bunn
for Failing to Give Proper Information to MUSC)

74. Allegations above are incorporated into this count as if fully stated. This cause of action presumes that MUSC personnel were not given complete and accurate information about the events associated with plaintiff Brown's arrest by officers Kursch, Moore and Bunn.

75. Plaintiff Brown is a citizen of the United States.

76. Plaintiff Brown's detention and arrest constituted a "seizure" under the Fourth Amendment to the Constitution of the United States.

77. Defendants Kursch, Moore, and Bunn at all times pertinent to this complaint were employed by the CPD and acted under color of state law. This claim is brought against them in their individual capacities.

78. During the period of his detention Mr. Brown was entitled to adequate medical care under the protections of the Fifth and Fourteenth Amendments, and to possibly also the protections of the Eighth Amendment. Additionally, at all times during his detention, Brown was entitled to similar protections under the state constitution.

79. As of February 1, 2010, a reasonable person would have known that it was clearly established that plaintiff Brown was entitled under the Fifth and Fourteenth Amendments to have adequate medical care during his confinement.

80. Mr. Brown's medical condition after his arrest was objectively serious.

81. CPD defendants Kursch, Bunn and Moore subjectively knew that Mr. Brown's medical condition was serious and he needed medical attention. EMS was called for Mr. Brown and other precautions were taken on his behalf.

82. CPD defendants Kursch, Bunn, and Moore were deliberately indifferent to Mr. Brown's known serious medical need when they withheld from EMS and MUSC medical personnel that Mr. Brown had sustained a collision, a forearm blow to the neck, a knee to his back, or any other physical trauma.

83. MUSC medical personnel had no reason to investigate, diagnose, or treat Mr. Brown for his actual impairments because the CPD defendants Kursch, Moore and Bunn each withheld the vital information that would have caused investigation of Mr. Brown's actual injury by MUSC personnel and Jeffrey Bush, M.D. Defendants Kursch, Moore and Bunn gave false speculation to account for Mr. Brown's condition, namely that Mr. Brown had ingested narcotics, when in fact he had fractures to his cervical vertebrae.

84. Had defendants Kursch, Moore and Bunn not withheld and misrepresented the facts from which Mr. Brown's condition arose, Jeffrey Bush, M.D., and other MUSC personnel could have engaged for Mr. Brown on February 1, before he became paralyzed, the diagnostic and treatment steps attempted by MUSC personnel on February 2, after he became paralyzed.

10

85. Defendants Kursch, Moore and Bunn misrepresented critical information, and in so doing displayed deliberate indifference to Mr. Brown's constitutional right to adequate medical care. Prior to February 1, 2010, defendants Kursch, Moore and Bunn were aware that it is unlawful to withhold information from medical personnel treating person being detained, and to operate using a policy or custom to withhold such information.

86. The City of Charleston's Police Department has inadequate procedures and training sufficient to compel its police officers to fully and accurately report the history of a person in their custody that requires medical care. The City should be enjoined from failing to develop adequate training and procedures sufficient for that purpose.

87. The City of Charleston Police Department has a custom or policy for its officers to withhold information whenever medical needs have arisen during the course of an arrest. That custom or policy deprived plaintiff Brown of the rights, privileges, or immunities secured to him by the Constitution and laws of the United States as well as of South Carolina.

88. Defendant City of Charleston has a custom or policy to not spend the additional funds needed to have the proper training for its personnel needed to effectively disclose information for purposes of providing adequate medical care for detainees.

89. Unless enjoined, the City of Charleston will continue to fund and operate its police department in a manner which deprives detainees such as plaintiff Brown of constitutionally protected rights.

11

90. Plaintiff Brown is entitled to injunctive relief sufficient to prevent the City of Charleston from failing to provide funds necessary to train and operate its police force so as to provide proper information when detainees require medical care.

91. Mr. Brown has been injured as a result of the conduct of the defendants City of Charleston, Kursch, Moore and Bunn. He was deprived of the rights, privileges or immunities secured to him by the Constitution and laws of the United States and South Carolina, and is entitled to actual and punitive damages against the individual defendants, in amounts to be determined by the finder of fact, to redress his injuries as a result of that deprivation and its consequential injuries, and to injunctive relief against the City of Charleston.

92. Mr. Brown is entitled to actual damages, punitive damages, and injunctive relief as to the individual defendants Kursch, Moore, and Bunn as to their conduct, in their individual capacity, in amounts to be determined by the finder of fact.

**For a Second Cause of Action:**
**Deprivation of Rights Under 42 USC §§ 1981 and 1983**
(Count 2 Against Defendants City of Charleston, Moore, and Bunn
for Failing to Give Proper Information to the Charleston County Detention Center)

93. Allegations above are incorporated into this count as if fully stated. This cause of action presumes that Charleston County Detention Center personnel were not given complete and accurate information about the events associated with Mr. Brown's arrest.

94. After MUSC cleared Mr. Brown for jail based on the inaccurate and incomplete information given to EMS, MUSC and Jeffrey Bush, M.D. about Mr. Brown's arrest by defendants Kursch, Moore, and Bunn, Mr. Brown was transported to the Charleston County Detention Center by defendants Moore and Bunn.

12

95. Upon arrival at the Detention Center, Mr. Brown's condition had deteriorated from his condition at the time he became unresponsive at the scene of his arrest. Mr. Brown was unable to move himself out of the car.

96. In light of Mr. Brown's now demonstrably deteriorated physical capability when he could not remove himself from the car, neither Moore nor Bunn related to Detention Center personnel the accurate account of Mr. Brown's arrest. Instead, Mr. Brown was falsely accused by defendants Moore and Bunn of "refusing all orders from officers" Moore and Bunn and of "making himself dead weight refusing to come out of the squad car." Personnel at the Detention Center were enlisted to remove Mr. Brown from the squad car.

97. Defendants Moore, and Bunn at all times pertinent to this complaint were employed by the City of Charleston in its Police Department and acted under color of state law. This claim is brought against them in their individual capacities.

98. During the period of his detention Mr. Brown was entitled to adequate medical care under the protections of the Fifth and Fourteenth Amendments, and to possibly also the protections of the Eighth Amendment. Additionally, at all times during his detention, Mr. Brown was entitled to similar protections under the state constitution.

99. As of February 1, 2010, a reasonable person would have known that it was clearly established that Mr. Brown, like any other person under police detention, was entitled under the Fifth and Fourteenth Amendments to have adequate medical care during his confinement.

100.    Mr. Brown's medical condition after his arrest was objectively serious, and demonstrably even more obviously so when he was unable to remove himself from the squad car.

13

101.    Defendants Moore and Bunn were aware that no complete history had been given to MUSC or Jeffrey Bush, M.D., about the circumstances of Mr. Brown's arrest, yet even after Mr. Brown's incapacity became more pronounced, neither Bunn nor Moore disclosed the circumstances of Mr. Brown's arrest.

102.    Defendants Bunn and Moore subjectively knew that Mr. Brown's medical condition was serious and he needed additional medical attention.  Detention Center personnel were called to remove Mr. Brown from the squad car.

103.    Defendants Bunn and Moore were each deliberately indifferent to Mr. Brown's known serious medical need when they withheld from Detention Center personnel that Mr. Brown had sustained a collision, a forearm blow to the neck, a knee to his back, or any other physical trauma associated with his arrest.

104.    Detention Center personnel had no reason to refuse Mr. Brown into the Detention Center and return him to MUSC medical personnel for additional investigation, diagnosis, or treatment because Moore and Bunn withheld from the Detention Center the vital information that would have caused investigation of Mr. Brown's actual injury.  Moore and Bunn instead gave false speculation to account for Mr. Brown's condition, namely that Mr. Brown was electing to passively resist, when in fact he had fractures to his cervical vertebrae.

105.    Had Moore and Bunn not withheld and misrepresented the facts from which Mr. Brown's condition arose, the Detention Center could have reviewed that information, and Mr. Brown's additional deterioration, to determine whether to return Mr. Brown to MUSC, possibly before Mr. Brown's his paralysis became permanent, so the diagnostic and treatment steps attempted by MUSC personnel on February 2, after he became paralyzed, could have been attempted on February 1.

14

106.    For a second time defendants Moore and Bunn misrepresented critical information to medical personnel, and in so doing displayed deliberate indifference to Mr. Brown's constitutional right to adequate medical care. Prior to February 1, 2010, defendants Moore, and Bunn were aware that it is unlawful to withhold information from medical personnel treating person being detained, and to operate using a policy or custom to withhold such information.

107.    The City of Charleston in its Police Department has inadequate procedures and training sufficient to compel its police officers to fully and accurately report the history of a person in their custody that requires medical care. The City should be enjoined from failing to develop adequate training and procedures sufficient for that purpose.

108.    The City of Charleston Police Department has a custom or policy for its officers to withhold information whenever medical needs have arisen during the course of an arrest. That custom or policy deprived Mr. Brown of the rights, privileges, or immunities secured to him by the Constitution and laws of the United States as well as of South Carolina.

109.    Defendant City of Charleston has a custom or policy to not spend the additional funds needed to have the proper training for its personnel needed to effectively disclose information for purposes of providing adequate medical care for detainees.

110.    Unless enjoined, the City of Charleston will continue to fund and operate its police department in a manner which deprives detainees such as Mr. Brown of constitutionally protected rights.

111.    Mr. Brown is entitled to injunctive relief sufficient to prevent the City of Charleston from failing to provide funds sufficient to train and operate its police force so as to provide proper information when detainees require medical care.

112.    Mr. Brown has been injured as a result of the conduct of the defendants Moore and Bunn.  He was deprived of the rights, privileges or immunities secured to him by the Constitution and laws of the United States and South Carolina, and is entitled to actual and punitive damages against the individual defendants Moore and Bunn, in amounts to be determined by the finder of fact, to redress his injuries as a result of that deprivation and its consequential injuries.

**For a Third Cause of Action:**
**Violation of the 42 U.S.C. 1985(3), Conspiracy to Interfere With Civil Rights**
(Count 1: Against Individual Defendants Moore, Kursch and Bunn individually)

113.    Allegations above are incorporated into this cause of action as if fully stated.

114.    Mr. Brown was injured in his person and was deprived of his right and privilege as a citizen of the United States to receive adequate medical care while he was in the custody of the Charleston Police Department and the Charleston County Detention Center.

115.    Defendants Moore, Bunn and Kursch each took one or more overt acts in furtherance of their joint action to conspire together among themselves for the purpose of depriving Mr. Brown of adequate medical care at MUSC and at the Charleston County Detention Center by their inaction and withholding information.

116.    By their conduct, the individual defendants Kursch, Bunn and Moore directly, as well as indirectly, deprived Mr. Brown of the equal protection of the laws, and of equal privileges and immunities under the laws.  Kursch, Bunn and Moore

16

coordinated action so as to deprive EMS, MUSC, and Jeffrey Bush, M.D., of accurate information about Mr. Brown and his arrest, and Bunn and Moore coordinated with each other to deprive the Charleston County Detention Center of accurate information about Mr. Brown and his arrest after Mr. Brown was transported by them to the Detention Center.

117.    Mr. Brown seeks monetary relief for his damages for the coordinated actions of the individual defendants Kursch, Bunn and Moore in omitting vital information about his arrest when his medical care was being first delivered, by EMS and MUSC. Omissions in Mr. Brown's medical care were intended by defendants to occur. Defendants Kursch, Moore and Bunn were aware of his serious medical condition, acted in conjunction with one another so as to conceal those events from MUSC, from Jeffrey Bush, M.D., and from the Charleston County Detention Center.

118.    Mr. Brown is entitled to actual and punitive damages against defendants for his injuries and deprivation of right.

### For a Fourth Cause of Action: Neglect to Prevent under 42 USC § 1986 Count 1: Against Individual Defendants Kursch, Bunn and Moore

119.    Allegations above are incorporated as if fully stated.

120.    Defendant Kursch had knowledge that neither defendant Bunn nor defendant Moore had disclosed to MUSC the actual circumstances attending Mr. Brown's arrest, and that withholding the information deprived Mr. Brown of the equal protection of the laws and his due process rights.

121.    Defendant Bunn had knowledge that neither defendant Kursch nor defendant Moore had disclosed to MUSC the actual circumstances attending Mr. Brown's arrest, and that withholding the information deprived Mr. Brown of the equal

17

protection of the laws and his due process rights.

122.    Defendant Moore had knowledge that neither defendant Bunn nor defendant Kursch had disclosed to MUSC the actual circumstances attending Mr. Brown's arrest, and that withholding the information deprived Mr. Brown of the equal protection of the laws and his due process rights.

123.    Each of defendants Kursch, Moore, and Bunn had the power to prevent the concealment of the actual circumstances attending Mr. Brown's arrest by himself making that disclosure, and by so doing prevent Mr. Brown from being deprived of his rights to adequate medical care.

124.    By reasonable diligence each of the defendants Kursch, Moore and Bunn could have easily taken it upon himself to disclose the actual circumstances attending Mr. Brown's arrest. Each consciously chose not to do so.

125.    Mr. Brown was entitled to equal privileges and immunities under the laws and Constitutions of South Carolina and the United States, and to due process, even after he was detained by defendants Kursch, Moore and Bunn.

126.    Kursch, Moore and Bunn each wrongfully neglected or refused to prevent Mr. Brown's rights from being impeded and interfered with, and are responsible for all damages caused by their wrongful actions and inactions, including Mr. Brown's lifelong paralysis.

127.    Mr. Brown is entitled to actual and punitive damages as a result of the conduct of Kursch, Moore and Bunn, against each of them individually.

**For a Fifth Cause of Action: Neglect to Prevent under 42 USC § 1986**
**Count 2: Against Individual Defendants Bunn and Moore**

128.    Allegations above are incorporated as if fully stated.

18

129.    Defendant Bunn had knowledge that defendant Moore had not disclosed to the Charleston County Detention Center the actual circumstances attending Mr. Brown's arrest, or that Mr. Brown's condition had deteriorated since his arrest, and that withholding the information deprived Mr. Brown of the equal protection of the laws and his due process rights.

130.    Defendant Moore had knowledge that defendant Bunn had not disclosed to the Charleston County Detention Center the actual circumstances attending Mr. Brown's arrest, or that Mr. Brown's condition had deteriorated since his arrest, and that withholding the information deprived Mr. Brown of the equal protection of the laws and his due process rights.

131.    Each of defendants Moore and Bunn had the power to disclose the actual circumstances attending Mr. Brown's arrest, and that Mr. Brown's condition had deteriorated since his arrest, by himself making that disclosure, and by so doing prevent Mr. Brown from being deprived of his rights to adequate medical care.

132.    By reasonable diligence each of defendants Moore and Bunn could have easily taken it upon himself to disclose to personnel at the Charleston County Detention Center the actual circumstances attending Mr. Brown's arrest and that his condition had deteriorated since his arrest. Each consciously chose not to do so.

133.    Mr. Brown was entitled to equal privileges and immunities under the laws and Constitutions of South Carolina and the United States, and to due process, even after he was detained by defendants Moore and Bunn.

134.    Moore and Bunn each wrongfully neglected or refused to prevent Mr. Brown's rights from being impeded and interfered with, and are responsible for all damages caused by their wrongful actions and inactions.

19

135.     Mr. Brown is entitled to actual and punitive damages as a result of the conduct of Moore and Bunn, against each of them individually.

**For a Sixth Cause of Action:**
**Violation of the State Tort Claims Act**
(Against the City of Charleston and the Sheriff of Charleston County)

136.     Allegations of paragraph 1 – 73 above are incorporated in this cause of action as if fully stated.

137.     Under state law, the City of Charleston is responsible for the actions of its employee police officers, and for properly training them.

138.     Under state law, Al Cannon as the Sheriff of Charleston County is responsible for the conduct of his deputies, and for the conduct of his jailers, not through *respondeat superior*, which imposes liability only for actions within the scope of employment, but because each deputy's action is a representative act, on behalf of the sheriff, as if done by the sheriff, regardless of the scope of employment. As to jailers at the Detention Center, S.C. Code § 24-5-10 provides "the sheriff shall be liable for" each of his jailers.

139.     In this complaint, each of the personnel interacting with Mr. Brown at the Charleston County Detention Center acted within the course and scope of his or her employment.

140.     Defendant Al Cannon is responsible for training and supervising the deputies and the individuals employed at the Detention Center, law enforcement or medical, as well as for his own actions and inactions.

141.     The Sheriff has final decision-making authority for administration of the Sheriff's office. He is responsible for staffing, training, supervising, and

20

controlling his deputies and jailers, including the medical personnel, who assist him in operating the Detention Center.

142.    Defendants Cannon and the City of Charleston assumed the duty for, and were responsible to Mr. Brown for, training their personnel to properly provide adequate medical care to individuals during their detention. Those duties were performed in a negligent manner.

143.    The City of Charleston was negligent in not properly training and supervising city police officers sufficient to cause them to properly disclose the facts needed to deliver proper medical care to Mr. Brown when he was at MUSC on February 1, or to properly disclose the facts needed to evaluate Mr. Brown's deteriorated medical condition when Mr. Brown arrived from MUSC to the Detention Center on February 1.

144.    The Sheriff of Charleston County was negligent in not properly training and supervising Detention Center responsible to assess and accept persons such as Mr. Brown for confinement at the Detention Center.  When Mr. Brown's condition had deteriorated after leaving MUSC, the Detention Center personnel performed on February 1 an insufficient examination of Mr. Brown when faced with the first manifestations of his deteriorating condition. Had Mr. Brown's condition been properly assessed as it presented, Detention Center personnel would have observed Mr. Brown's medical condition having deteriorated from that presented on his record from MUSC, Mr. Brown would have been returned to MUSC, and a full disclosure would have been made by Officers Moore and Bunn.

145.    As a direct and proximate result of the negligence of the City of Charleston and the Sheriff of Charleston County, through their respective employees and agents, Mr. Brown sustained permanent physical injury, violations of his constitutional

21

rights under the Fifth, and Fourteenth Amendments to the United States Constitution to due process and other rights without impairment; violations of his constitutional rights under the South Carolina Constitution; physical pain and suffering and emotional trauma; impairment of his future opportunities, including employment opportunities, due to his paralysis, and out of pocket costs, fees, and attorneys fees associated with this action.

146.    Mr. Brown is entitled to injunctive relief as well as actual damages against the City of Charleston and the Sheriff of Charleston County in his official capacity under the South Carolina Tort Claims Act, for Mr. Brown's losses and actual damages.

### For a Seventh Cause of Action:
### Violation of the South Carolina Code § 16-5-60
(Against Charleston County)

147.    Charleston County is a South Carolina county.

148.    Mr. Brown at all times pertinent to this complaint was a citizen of Charleston County, entitled under the Constitution to adequate medical care while in police custody.

149.    Mr. Brown was hindered, prevented or obstructed in the exercise of the rights and privileges secured to him by the Constitution and laws of the United States, or by the Constitution and laws of South Carolina, or both, and sustained personal injury as a result of his deprivation by the defendants.

150.    Specifically hindered, prevented, or obstructed were Mr. Brown's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Art. 1 § 3 of the South Carolina Constitution to have adequate medical care while in police custody.

151.    As a result of the manner of his arrest on February 1, for a period

of time Mr. Brown was unable to speak for himself, and to exercise his Constitutional

rights he relied on others to convey accurate information about his arrest to medical

personnel.  His free exercise of his due process rights was hindered, prevented or

obstructed by the actions of Kursch, Bunn and Moore.  Mr. Brown was injured in his

person in attempting to exercise his due process rights.  His attempt to exercise his rights,

the infringement of those rights, and his personal injury from his attempt to exercise

those rights took place in Charleston County.

      152.     By S.C. Code § 16-5-60, Charleston County owed Mr. Brown a

duty to respond to the infringement of his rights, and is "responsible for the payment of

such damages as the court may award," for that infringement.

      153.     Charleston County is responsible for the payment of such

actual and punitive damages as the court may award.

### For an Eighth Cause of Action: Declaratory Relief

      154.     Allegations above are incorporated into this cause of action as

if fully stated.

      155.     Pursuant to 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. §§ 1983

and 1986, the court should declare that inadequate protections made available to Mr.

Brown violated Mr. Brown's Fifth and Fourteenth Amendment rights to the United States

Constitution, his rights under Article 1 § 3 of the South Carolina Constitution, and that a

continuing policy of inadequate medical care for detainees by withholding information

pertinent to their medical care violates Mr. Brown's rights under the Fifth and Fourteenth

Amendments.

23

## For a First Alternative Cause of Action:
## Deprivation of Rights Under 42 USC §§ 1981 and 1983
(Against Defendants Medical University of South Carolina and Jeffrey Bush, M.D.

156.    Allegations of paragraph 1 – 50 above are incorporated into this count as if fully stated.  This alternative cause of action presumes that Jeffrey Bush, M.D. and MUSC personnel were given complete and accurate information about the events associated with Mr. Brown's arrest.  In the event it is established that complete and accurate information about the events associated with Mr. Brown's arrest, including the collision, the forearm to Mr. Brown's neck, the knee to Mr. Brown's back, was not conveyed to MUSC and to Jeffrey Bush, M.D., this cause of action will be dismissed.

157.    Mr. Brown is a citizen of the United States.

158.    Mr. Brown's detention and arrest constituted a "seizure" under the Fourth Amendment to the Constitution of the United States.

159.    Defendant Medical University of South Carolina (MUSC) is an entity created and funded by the State of South Carolina.

160.    Jeffrey Bush, M.D., at all times pertinent to this complaint was employed at MUSC, and acted on behalf of MUSC.  In that capacity, he acted under color of state law.

161.    This claim is brought against Jeffrey Bush, M.D. in his individual capacity for damages, and against MUSC in its institutional capacity for injunctive relief.

162.    While he was under police custody at MUSC, Mr. Brown was entitled to adequate medical care under the protections of the Fifth and Fourteenth Amendments, and to possibly also the protections of the Eighth Amendment. Additionally, at all times during his detention, Mr. Brown was entitled to similar protections under the state constitution through Article 1 § 3.

24

163.    As of February 1, 2010, a reasonable person would have known that it was clearly established that plaintiff Brown was entitled under the Fifth and Fourteenth Amendments to have adequate medical care during his confinement.

164.    Mr. Brown's medical condition after his arrest was objectively serious.

165.    Jeffrey Bush, M.D. subjectively knew Mr. Brown's medical condition was serious and that Mr. Brown needed medical attention. EMS delivered Mr. Brown to MUSC with precautions taken to protect his cervical spine, among other things.

166.    Upon information and belief as an alternative to the events as alleged as precedes this cause of action in the Complaint, CPD defendants Kursch, Bunn, and Moore informed MUSC personnel including Jeffrey Bush, M.D., that Mr. Brown had sustained a collision, a forearm blow to the neck, a knee to his back, and other physical trauma during the course of his arrest.

167.    Jeffrey Bush, M.D. was deliberately indifferent to Mr. Brown's known serious medical needs in light of that information which this cause of action presumes, alternatively, Jeffrey Bush, M.D. was given. None of the substantial diagnostic and remedial precautions taken for Mr. Brown starting February 2, 2010 were taken for him on February 1, 2010, even though it was known such precautions and procedures were called for by the nature of Mr. Brown's injuries.

168.    MUSC had a policy or practice to permit physicians to exercise deliberate indifference to the needs of persons in police custody. MUSC should be enjoined from permitting its physicians and staff from deliberate indifference towards the medical needs of persons in police custody.

169.    But for his deliberate indifference, Jeffrey Bush, M.D. and other MUSC personnel could have engaged for Mr. Brown on February 1, before he became paralyzed, the diagnostic and treatment steps attempted by MUSC personnel on February 2, after he became paralyzed.  By waiting too long for proper treatment, Mr. Brown became irrevocably paralyzed.

170.    Prior to February 1, 2010, defendant Bush was aware that it is unlawful to deliberately disregard serious medical needs of a person in police custody, and to operate using a policy or custom to withhold such information.

171.    MUSC has inadequate procedures and training sufficient to prohibit its physicians from deliberately disregarding serious medical needs of persons in police custody.  MUSC should be enjoined from failing to develop adequate training and procedures sufficient for that purpose.

172.    That custom or policy deprived Mr. Brown of the rights, privileges, or immunities secured to him by the Constitution and laws of the United States as well as of South Carolina.

173.    Unless enjoined, MUSC will continue to operate in a manner which deprives detainees such as Mr. Brown of constitutionally protected rights.

174.    Mr. Brown is entitled to injunctive relief sufficient to prevent the MUSC from failing to train and operate its emergency facilities so as to restrict personnel from deliberately disregarding serious medical needs of persons in police custody.

175.    Mr. Brown has been injured as a result of the conduct of the defendant Bush.  He was deprived of the rights, privileges or immunities secured to him by the Constitution and laws of the United States and South Carolina, and is entitled to actual and punitive damages against him, in amounts to be determined by the finder of

26

fact, to redress his injuries as a result of that deprivation and its consequential injuries.

Mr. Brown is also entitled under this cause of action to injunctive relief against MUSC to

alter its policy and practice enabling deliberate disregard of serious medical needs for

persons in police custody.

### For a Second Alternative Cause of Action:
### Violation of the 42 U.S.C. 1985(3), Conspiracy to Interfere With Civil Rights
(Against defendants Moore, Bunn, the Sheriff of Charleston County, Phillips,
Houston-Haynes, Pool, McPherson, Linane, Johnson, and Gregg)

176.    Allegations of paragraphs 1 – 50 above are incorporated into this

cause of action as if fully stated.

177.    The Sheriff of Charleston County is sued in this alternative cause

of action for only injunctive relief.  Defendants Moore, Bunn, Phillips, Houston-Haynes,

Pool, McPherson, Linane, Johnson, and Gregg are sued for actual and punitive damages

in their individual capacities.

178.    This alternative cause of action presumes that Moore and Bunn had

not informed MUSC personnel, but had informed personnel at the Charleston County

Detention Center, of the circumstances of Mr. Brown's arrest, including that Mr. Brown

had sustained a collision, a forearm blow to his neck, a knee to his back, as well as that

Mr. Brown's condition had worsened from when he left MUSC to when he arrived at the

Charleston County Detention Center unable to move from the squad car in which he was

transported to the Detention Center by Moore and Bunn.

179.    Mr. Brown was injured in his person and was deprived of his right

and privilege as a citizen of the United States to receive adequate medical care while he

was in the custody of the Charleston police department and the Charleston County

Detention Center.

27

180.    Defendants Moore, Bunn, Phillips, Houston-Haynes, Pool, McPherson, Linane, Johnson, and Gregg each took one or more overt acts in furtherance of their joint action to conspire together among themselves for the purpose of depriving Mr. Brown of adequate medical care.

181.    Moore, Bunn, Phillips, Houston-Haynes, Pool, McPherson, Linane, and Johnson, collaborated to remove Mr. Brown from the squad car knowing Mr. Brown could no longer himself move, knowing that his condition had deteriorated since his having left MUSC, knowing that Mr. Brown needed to be immediately returned to MUSC for medical care, and knowing their refusal to do so would deprive Mr. Brown of the equal protection of the laws, and of equal privileges and immunities under the laws.

182.    After being moved to the Detention Center on February 1, 2010, defendant Phillips reviewed the information conveyed by MUSC with Mr. Brown. That information was sufficient to alter defendant Phillips that Mr. Brown's medical condition had deteriorated from when Mr. Brown was at MUSC. Despite that knowledge, defendant Phillips collaborated with other defendants in this cause of action to deprive Mr. Brown of adequate medical care, and caused Mr. Brown to be moved into the Detention Center and not returned to MUSC.

183.    After being moved into the Detention Center on February 1, 2010, defendant Gregg performed a "medical screening" which affirmatively misrepresented Mr. Brown's condition. For example, although Mr. Brown was now unable to move, defendant Gregg misrepresented his condition as "fair," with "no visible signs of injury," and that he had not been "Taken to hospital prior to intake." These misrepresentations by Gregg were part of the collaborative actions by the defendants in this cause of action to deprive Mr. Brown of adequate medical care.

28

184.    Mr. Brown is entitled to monetary relief for his damages from the coordinated actions of the individual defendants as set forth above which were intended to deprive Mr. Brown of adequate medical care, knowing that his medical condition was serious and required advanced care, and punitive damages for the conduct of the individual defendants in consciously depriving Mr. Brown of his rights and causing him injury.

185.    The Sheriff of Charleston County operates the Detention Center using a policy or practice which permits individuals employed there to elect whether or not to provide adequate medical care.  Unless enjoined, the Sheriff will continue to operate the Detention Center with inadequate protections for the constitutional rights of persons detained.

186.    Mr. Brown is entitled to actual and punitive damages against the individual defendants for his injuries and deprivation of right, and to injunctive relief against the Sheriff of Charleston County to enjoin him from failing to develop proper policies and procedures to prevent persons detained from being deprived of their right to adequate medical care.

### Demand for Jury Trial

187.    Plaintiff demands a trial by jury.


### Relief Sought

Wherefore, Plaintiff requests that this Court:

188.    Enjoin defendant City of Charleston from failing to have adequate procedures sufficient to compel its police officers to fully and accurately report the history of a person in their custody that requires medical care; from failing to  develop

29

adequate training and procedures sufficient for that purpose; from ceasing its custom or policy for its officers to withhold information whenever medical needs have arisen during the course of an arrest; from failing to expend sums sufficient to have the proper training for its personnel to effectively disclose information for purposes of providing adequate medical care for detainees; and from operating its police department in a manner which deprives detainees such as Mr. Brown of constitutionally protected rights.

189.    Actual and punitive damages, individually, against defendants Kursch, Moore and Bunn, and injunctive relief against them to enjoin them from withholding information against any other detainee in need of medical care.

190.    Actual damages and injunctive relief under the South Carolina Tort Claims Act against the City of Charleston and Al Cannon, Sheriff of Charleston County in his official capacity.

191.    Actual and punitive damages as awarded to Mr. Brown to be paid by Charleston County under S.C. Code § 16-5-60.

192.    Alternatively, enjoin MUSC from failing to develop adequate procedures and training sufficient to prohibit its physicians from deliberately disregarding serious medical needs of persons in police custody; from operating with a custom or policy that deprives arrested persons such as Mr. Brown of the rights, privileges, or immunities secured to him by the Constitution and laws of the United States as well as of South Carolina by deliberately disregarding serious medical needs of persons in police custody.

193.    Alternatively, award actual and punitive damages against defendant Jeffrey Bush, M.D., should it be determined that he was informed by officers Kursch, Moore, or Bunn of the circumstances associated with Mr. Brown's arrest to

30

include the collision, the forearm blow to his neck, and the knee put into Mr. Brown's back.

194.    Alternatively, enjoin the Sheriff of Charleston County from operating the Detention Center using a policy or practice which permits individuals employed there to elect whether or not to provide adequate medical care to persons, such as Mr. Brown, who are detained there.

195.    Enjoin defendant Cannon in his official capacity from staffing, training staff, both deputies and medical personnel, operating the jail, and supervising personnel so as to deprive persons detained from their right to adequate medical care.

196.    Alternatively, actual and punitive damages against defendants Moore, Bunn, Phillips, Houston-Haynes, Pool, McPherson, Linane, Johnson, and Gregg for damages caused to Mr. Brown.

197.    Enjoin all defendants, their agents, employees, assigns, and all persons acting in concert or participating with them from violating the rights of individuals to adequate medical care under state and federal constitutions. Defendants should each be enjoined from failing to properly provide adequate medical care for detainees.

198.    Pursuant to 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. §§ 1983 and 1986, declaratory relief that inadequate protections made available to Mr. Brown violated Mr. Brown's Fifth and Fourteenth Amendment rights to the United States Constitution, his rights under Article 1 § 3 of the South Carolina Constitution, and that a continuing policy of inadequate medical care for detainees by withholding information pertinent to their medical care violates Mr. Brown's rights under the Fifth and Fourteenth Amendments.

199.    Award compensatory and punitive damages to Mr. Brown as determined by the finder of fact against the individual defendants under the claims under federal law,

200.    Award compensatory damages to Mr. Brown as determined by the finder of fact against all defendants for the claims under state law,

201.    Award Mr. Brown his costs of suit and reasonable attorneys' fees under 42 U.S.C. § 1988; and

202.    For such other and further relief as the court shall deem just and proper.

Respectfully submitted.

Alex Apostolou
215 East Bay Suite 505F
Charleston SC 29401
843-853-3637
alexapostolou@bellsouth.net

Gregg Meyers
1 Poston Road, Suite 110
Charleston SC 29407
843-556-1025
attygm@gmail.com

Attorneys for Plaintiff

32