IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

STANLEY BROWN,                          )
                                        )        No. 2:11-cv-00466-DCN
            Plaintiff,                  )
                                        )
    vs.                                 )
                                        )               **ORDER**
CITY OF CHARLESTON; OFFICERS            )
JUSTIN KURSCH, BRIAN C. BUNN, and       )
JOHN L. MOORE, *in their individual*    )
*capacities*; MEDICAL UNIVERSITY OF     )
SOUTH CAROLINA; DR. JEFFREY             )
BUSH, *in his individual capacity*; SHERIFF )
AL CANNON, *in his official capacity*;  )
GREGG THOMAS, *in his individual*       )
*capacity*; and NURSE DEBBIE PHILLIPS,  )
*in her individual capacity*,           )
                                        )
            Defendants.                 )
_____)

This case arises from the arrest of plaintiff Stanley Brown on February 1, 2010.

Brown alleges that as a result of treatment during and after his arrest, his stay at the

Medical University of South Carolina (MUSC), and his stay in the Charleston County

Detention Center, he is now permanently paralyzed below his upper torso. Brown brings

action against numerous defendants, which have each moved for summary judgment and

which may be grouped as follows: City of Charleston and Officers Justin Kursch, Brian

C. Bunn, and John L. Moore (the "City of Charleston defendants"); MUSC and Dr.

Jeffrey Bush (the "MUSC defendants"); and Sheriff Al Cannon and Officer Gregg

Thomas (the "Charleston County defendants"). Nurse Phillips, while alleged to be a

Charleston County employee, has filed her own motion for summary judgment. For the

reasons set forth below, the court grants in part and denies in part the City of Charleston

1

defendants' motion for summary judgment; grants in part and denies in part the MUSC

defendants' motion for summary judgment; grants the Charleston County defendants'

motion for summary judgment; and grants in part and denies in part Nurse Phillips's

motion for summary judgment.

## I.  BACKGROUND

Brown filed suit in state court on January 27, 2011.  Defendants removed to

federal court on February 25, 2011.   On June 11, 2012, with leave of court, Brown filed

an amended complaint.  Defendants filed their respective motions for summary judgment

in June and July of 2013.

In his amended complaint, Brown alleges that on February 1, 2010 at around 7:00

p.m., Officers Kursch, Bunn, and Moore of the Charleston Police Department ("CPD")

were on patrol.  Am. Compl. ¶ 15.  Officers Kursch and Bunn were riding together in a

marked police cruiser and Officer Moore was alone in a separate marked police cruiser.

Id. ¶ 17.  Officer Moore came within proximity of Brown and saw Brown on the street

with another person.  Id. ¶ 18.  Officer Moore shined his police cruiser's spotlight on

Brown and attempted to conduct a "person stop" on Brown because he "wanted to get out

and talk to him."  Id. ¶¶ 19-21.  Officers Kursch and Bunn were about 25 feet away from

Officer Moore.  Id. ¶ 22.

Brown saw the spotlight and ran.  Id. ¶ 23; Brown Dep. 26:18-20.  Officer Moore

exited his cruiser and gave chase on foot.  Am. Compl. ¶ 24.  Officer Kursch moved his

cruiser in front of Brown to try to stop Brown and to allow Officer Bunn to exit the

vehicle.  Id. ¶ 25.  Officer Bunn exited and gave chase.  Id. ¶ 26.

When Officer Kursch moved his cruiser in front of Brown, Brown changed the direction in which he was running.  Id. ¶ 27.  Officer Moore, still chasing Brown, called out to Brown to stop or he would use his taser.  Id. ¶ 28.  Upon Officer Moore's warning, Brown stopped running and put his hands in the air.  Id. ¶ 29.  Brown then voluntarily laid down on the asphalt.  Id. ¶¶ 32-34.  Brown told the officers he had asthma.  Id. ¶ 35.

While Brown was lying on the ground, Officers Kursch and Bunn were on Brown's left side and Officer Moore was on Brown's right side.  Id. ¶ 34.  A small "tussle" ensued before Brown was handcuffed, but Brown made no other resistance.  Id. ¶¶ 36-37.  Officer Moore struck Brown with a "knee strike to his right side" that hit Brown "in the lower rib cage."[1]  Id. ¶ 38.  Brown was placed under arrest.  Id. ¶ 39.

Officers Kursch and Moore picked up Brown and escorted him to Officer Kursch's police cruiser.  Id. ¶ 40.  The officers saw narcotics on the ground where Brown had been lying.  Id. ¶ 41.  Along the way to Officer Kursch's cruiser, the officers noticed Brown was "plodding" and his feet were moving like he was trying to walk, but the officers had to carry most of his weight.  Id. ¶ 42.  The officers perceived this to be resistance by Brown.  Id. ¶ 43.  Brown was taken to the rear of the cruiser and searched.  Id. ¶ 44.  Brown became unresponsive and lost muscle control.  Id. ¶ 45.  He had only "a

---

[1] The officers claim that when Brown stopped running, Officer Bunn accidentally collided with Brown, causing Brown to fall to the ground.  Plaintiff denies this collision occurred and testified instead that he was not struck until after he laid on the ground.  Am Compl. ¶ 30; see Brown Dep. 38:12 ("I went down on the ground myself.").  Brown further testified he was lying down with his hands by his head when he "felt something hit me in the back," particularly in the middle of his back, and then "blacked out."  Brown Dep. 39:1-40:12.  He had allegedly been on the ground for "about two minutes" before he felt the officer's knee.  Id. 40:13-15.

very shallow pulse." Id.  Officer Kursch called for Emergency Medical Services

("EMS") and laid Brown on his side, checking for airway blockage.  Id. ¶¶ 46-47.

EMS arrived and found Brown to be "unconscious" and "responsive only to deep

pain." Id. ¶¶ 48-49 (quoting EMS report).  EMS secured Brown's head with a spineboard

and full C-Spine precautions.  Id. ¶ 50.  None of the officers told EMS that Brown had

undergone physical trauma because of a collision or knee strike.  Id. ¶ 51.  Instead, they

told EMS that Brown had "collapsed" but did not know "how hard he fell when he

collapsed," and attributed the collapse to possible use of narcotics.  Id. ¶¶ 51-52.  The

EMS report cites "No Trauma."  Pl.'s Am. Compl. Ex. 1 at 1.  The narrative states,

"According to CPD pt stated that 'I have asthma' and collapsed.  Pt acting as if he

swallowed some sort of narcotic."  Id. at 2.

EMS transported Brown to MUSC and arrived at approximately 7:34 p.m.  Am.

Compl. ¶¶ 54-55.  Brown alleges that when he arrived at MUSC, he was still able to use

his extremities and was "not yet paralyzed from his broken neck."  Pl.'s Resp. Opp'n,

ECF No. 117 at 7.  The officers rode with EMS to MUSC.  Am. Compl. ¶ 56.  Brown

was placed in the ER and seen by Dr. Jeffrey Bush.  Id. ¶ 57.  No examination or imaging

studies were made of Brown's vertebrae.  Id. ¶¶ 59, 65.  Although MUSC records

indicate that Brown initially had motor control of his legs, had sustained no loss of

consciousness, and had sustained no head injury, Brown claims this medical history was

either falsely reported by the police officers or improperly determined by MUSC

physicians.  Id. ¶ 60.

Dr. Bush removed Brown from his spinal precautions.  Id. ¶ 61.  Brown told

MUSC personnel that he could not feel his legs but Dr. Bush failed to examine Brown's

vertebrae.  Id. ¶ 65.  Dr. Bush cleared Brown for incarceration at the Charleston County

Detention Center, even though Brown was now unable to feel or move his legs.  Id. ¶ 67;

see Pl.'s Am. Compl. Ex. 6 (MUSC report stating Brown is "Clear for Jail").  Brown was

taken from MUSC at approximately 9:53 p.m.  Am. Compl. ¶ 68.  Video taken at MUSC

shows Officers Bunn and Moore exiting MUSC and supporting Brown by his arms, with

Brown's legs appearing immobile and his feet dragging the ground.  Id. ¶ 69.

Officers Bunn and Moore took Brown to the police vehicle and drove him to the

Detention Center.  Id. ¶ 73.  Upon arrival, Brown remained unable to move his legs.  Id. ¶

74.  Brown told Officers Bunn and Moore, along with Nurse Phillips, that he was unable

to walk or feel his legs; however, the officers believed Brown was simply "making

himself dead weight" and "refusing to come out of the squad car."  Id. ¶¶ 74-75 (quoting

Dentention Center Incident Report).  In addition, Nurse Phillips assessed Brown and

"stated he was okay for acceptance."  Id. ¶ 76.

Brown was booked into the Detention Center by 10:35 p.m.  Id. ¶ 88.  Nurse

Phillips made another assessment of Brown after intake and booking, finding that Brown

did not require observation.  Id. ¶¶ 77, 85.  She took no steps to assess Brown's inability

to walk or feel his legs.  Id. ¶ 82.  Nurse Phillips was not told by Officers Bunn or Moore

that Brown had sustained any trauma.  Id. ¶ 86.

While at the Detention Center, Officer Bunn completed a "Jail Intake Assessment

Form."  Pl.'s Am. Compl. Ex. 7.  Officer Bunn denied that Brown had any medical

condition or injury that required immediate attention; that Brown needed an immediate

evaluation; that Brown had any behaviors that might suggest a brain injury; or that he had

any other information that would assist the Detention Center.  Am. Compl. ¶ 87.

Brown was given a "medical screening" by defendant Gregg Thomas, a Detention Center employee. Again, neither Officers Bunn nor Moore mentioned that Brown had sustained a collision or knee in the back or that Brown's condition had deteriorated. Id. ¶¶ 90-91. In his assessment, Thomas found that Brown did not have any signs of injury or illness requiring immediate treatment. Id. ¶ 95.

Brown was placed in an emergency restraint chair and seen again by Nurse Phillips. Their conversation was recorded and is partly audible. In the recording, Nurse Phillips asks Brown what happened to his legs. She asks, "The officer said you were running and just fell down. Is that what happened?" Id. ¶ 98. According to Brown, this question shows that the officers deliberately withheld the true story from Nurse Phillips. Id. ¶ 99. The audio recording also demonstrates Nurse Phillips's awareness that Brown had lost feeling in his legs. Id.

Shortly after midnight, Brown was moved to the floor of a cell in the Detention Center without observation. Id. ¶¶ 101-02. He remained there for approximately eight hours, unable to feel or move his legs. Id. ¶ 103. Brown had become incontinent since arriving at MUSC and could not control his bowel movements. Id. ¶ 104. Brown defecated on himself but was given no assistance and was left to lie in his own excrement. Id.

The following morning, February 2, 2010, Brown's condition was unchanged. Id. ¶ 106. At 8:10 a.m., a different nurse arrived and conducted a clinical evaluation. She recorded that Brown still complained of having "no feeling" from the waist down and that he had become incontinent. Id. ¶ 107.

6

At approximately 9:38 a.m., Brown was taken from the Detention Center back to MUSC.  Id. ¶ 110.  MUSC physicians recognized Brown's serious medical needs and attempted treatment.  Id. ¶ 111.  It was determined that Brown suffered three fractured cervical vertebrae, resulting in a spinal cord injury.  Pl.'s Resp. Opp'n, ECF No. 115 at 4. Because his needs had been neglected for more than fourteen hours, Brown's paraplegia could not be reversed, and he is now permanently paralyzed below his upper chest and confined to a wheelchair.  Am. Compl. ¶¶ 112, 114.

Brown brings the following thirteen causes of action:  (1) deliberate indifference under 42 U.S.C. § 1983 against the City of Charleston (the City) for injunctive relief, and for damages against Officers Kursch, Bunn, and Moore for failing to give proper information to EMS and MUSC medical providers; (2) deliberate indifference under § 1983 against the City for injunctive relief, and for damages against Officers Bunn and Moore for deliberate indifference to Brown's serious medical needs once Brown left MUSC and was taken to the Detention Center; (3) deliberate indifference under § 1983 against Gregg Thomas; (4) deliberate indifference under § 1983 against Nurse Phillips; (5) violation of 42 U.S.C. § 1985(3) for conspiring to interfere with civil rights against Officers Kursch, Bunn, and Moore; (6) neglect to prevent under 42 U.S.C. § 1986 against Officers Kursch, Bunn, and Moore; (7) neglect to prevent under § 1986 against Officers Bunn and Moore; (8) liability under the South Carolina Tort Claims Act against the City and Sheriff Cannon; (9) declaratory relief against all defendants; (10) deliberate indifference under § 1983 against MUSC and Dr. Jeffrey Bush; (11) violation of § 1985(3) for conspiring to interfere with civil rights against Sheriff Cannon, Officers Bunn

and Moore, Thomas, and Nurse Phillips; (12) deliberate indifference under § 1983 against MUSC and Dr. Jeffrey Bush; and (13) medical malpractice against MUSC.

## II.  STANDARD

Summary judgment shall be granted if the movant shows that there is no genuine dispute as to any issue of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor.  Id. at 255.

## III. DISCUSSION

Defendants' motions for summary judgment are discussed seriatim.

### A.  City of Charleston Defendants' Motion for Summary Judgment

Plaintiff asserts seven causes of actions against the City of Charleston defendants. Count One is for deliberate indifference against all City of Charleston defendants for failure to provide proper information to EMS and MUSC personnel.  Count Two is for deliberate indifference against the City and Officers Bunn and Moore for failure to provide proper information to Detention Center personnel.  Counts Five and Eleven are against the officers for conspiring to interfere with civil rights.  Counts Six and Seven are against the officers for neglecting to prevent the conspiracy to interfere with civil rights.

Finally, Count Eight is against the City for liability under the South Carolina Tort Claims Act.

The City of Charleston defendants set forth the following version of facts in their motion for summary judgment:

> While Brown was running, the officers observed him throw a single clear baggie to the ground. Brown circled a parked vehicle and started back toward his original location. Officer Moore doubled back and blocked his path, yelling that he had his taser out. Brown then doubled back in his original direction, but Officer Bunn was running toward him. When Brown turned away from Moore, he and Bunn collided, causing them both to go to the ground. Officer Moore caught up to them [and] attempted to place handcuffs on Brown. Brown resisted by pulling his arms under his body and actively resisting the attempts to pull out his arms and handcuff them. After a brief struggle, Brown's arms were pulled from beneath him, and he was handcuffed. He was then lifted to his feet and additional baggies of what was later determined to be heroin were dropped by Brown.

Defs.' Mem. Supp. Mot. Summ. J., ECF No. 104-1 at 2-3 (footnotes omitted); see also id. at 12-13 (alleging "[i]t was only when the plaintiff stopped, and made a sudden change of direction, that he collided with [O]fficer Bunn.  They went to the ground, and a struggle ensued.").  The officers admit "there are factual disparities between the version of events set forth by the plaintiff in his Complaint and those set forth by Officers Kurs[c]h, Bunn and Moore in their depositions and incident report."  Id. at 6.[2]

The officers originally moved for summary judgment on plaintiff's "§ 1983 use of excessive force claim."  In response, Brown pointed out that he brings no claim for use of excessive force.  In their reply brief, defendants refocus their arguments on plaintiff's

---

[2] Plaintiff responds that the City of Charleston defendants' motion "wildly fails to state the record in the light most favorable to Mr. Brown."  Pl.'s Resp. Opp'n, ECF No. 117 at 1.

failure to establish a claim under § 1983 for deliberate indifference[3]; plaintiff's failure to establish a claim under § 1985(3) for conspiracy to interfere with civil rights; plaintiff's failure to establish a claim under § 1986 for neglect to prevent; and plaintiff's failure to establish state law claims against the City.

### 1.  Deliberate Indifference Under § 1983 (Counts One and Two)

In Estelle v. Gamble, 429 U.S. 97 (1976), the United States Supreme Court recognized a federal cause of action for deliberate indifference to serious medical needs. The Court wrote that the claim is cognizable "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."  Id. at 104-05 (emphasis added).

Because Brown's claims stem from conduct prior to a conviction, the parties dispute whether Brown's claims for deliberate indifference must be analyzed under the Eighth Amendment's "cruel and unusual punishment" standard or the Fourteenth Amendment's "due process" standard.[4]  Plaintiff is correct in arguing that the Fourteenth Amendment applies.  See Hill v. Nicodemus, 979 F.2d 987, 990 (4th Cir. 1992) (citing City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)) ("Because Tanya Hill

---

[3] The court notes that in their opening brief for summary judgment, the officers fail to raise defenses to plaintiff's § 1983 claims for deliberate indifference.  Arguments raised for the first time in a reply brief are normally deemed waived.  Moseley v. Branker, 550 F.3d 312, 325 n.7 (4th Cir. 2008).

[4] Nurse Phillips is alone among the defendants in conceding that the Fourteenth Amendment governs.

was a pretrial detainee and not a convicted prisoner at the time of the alleged denial of medical care, the standard of care is governed by the due process clause of the fourteenth amendment rather than the eighth amendment's prohibition against cruel and unusual punishment.").  "While a convicted prisoner is entitled to protection only against 'cruel and unusual' punishment, a pretrial detainee, not yet found guilty of any crime, may not be subjected to punishment of any description."  Id. at 991.

To prevail on a claim of constitutionally inadequate medical care, plaintiff must produce evidence of acts or omissions sufficiently harmful to constitute deliberate indifference to his serious medical needs.  Estelle, 429 U.S. at 106.  First, Brown must show that the injury was objectively serious.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Then, he must show that defendants subjectively knew of his serious medical need.  Id. at 834-35.  A factfinder may infer that an officer knew of a substantial risk of harm from the fact that the need for medical attention was "'so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).  Finally, plaintiff must show that defendants acted with deliberate indifference to his serious medical needs.  Farmer, 511 U.S. at 835.  An official can be held liable for deliberate indifference only where "the official *knows of* and disregards an excessive risk to inmate health or safety."  Id. at 837 (emphasis added); see Scarbro v. New Hanover Cnty., 374 F. App'x 366 (4th Cir. 2010).

In Count One, plaintiff alleges that "[Officers] Kursch, Bunn, and Moore displayed deliberate indifferen[ce] to Mr. Brown's known serious medical need[s] when they each (a) withheld from EMS and MUSC medical personnel that Mr. Brown had sustained . . . a knee to his back, (b) denied any physical trauma was part of the arrest,

and (c) provided a narrative that was misleading as to the trauma associated with Mr. Brown's arrest."  Am. Compl. ¶ 124.  In Count Two, plaintiff alleges that Officers Bunn and Moore "knew, or should have known, that Mr. Brown's ability to move his legs had worsened from the time of his arrest."  Id. ¶ 145.  The officers "were deliberately indifferent to the serious medical need[s] of Mr. Brown when they observed that he was unable to move his legs when he left MUSC," yet insisted that Brown was simply trying to resist arrest.  Id. ¶ 147.  Like Count One, Count Two is based on the officers' alleged "misrepresent[ation] [of] critical information to medical personnel, this time at the Detention Center."  Id. ¶ 161.

     Brown cites medical reports, deposition testimony, and video recordings to support his position that the officers were deliberately indifferent to his known, serious medical needs throughout the night of February 1, 2010.  First, there is evidence that the officers told EMS that Brown "collapsed" and suffered "no trauma," failing to report a knee strike or any collision with Officer Bunn.  See Am. Compl. ¶¶ 51-52 & Ex. 1.  Next, according to Dr. Bush, the officers denied there had been "anything rough" during Brown's arrest that would warrant medical attention.  This caused Dr. Bush's index of suspicion for trauma to "drop precipitously."  Dr. Bush Dep. 24:5-18; see id. at 35:18-23 ("A:  After obtaining the history that I obtained, I did not get any history of significant trauma for this individual.  Q:  You weren't aware of any collision, impact or tackle?  A:  No, sir.").  Once Brown arrived at the Detention Center, a video recording was taken of Brown being removed from the police cruiser.  One of the officers tells Nurse Phillips that Brown had "r[u]n from us about two city blocks and then – played possum."  Pl.'s Resp. Opp'n, ECF No. 137-2 at 1.  In the meantime, Brown is recorded repeatedly

12

uttering that he has no feeling in his legs and cannot walk.  Finally, after Brown was

booked, Officer Bunn completed a "Jail Intake Assessment Form" and denied Brown had

any medical condition or injury that required immediate attention, although it is Brown's

contention that Officer Bunn knew Brown could not feel or move his legs.  Am. Compl. ¶

87 & Ex. 7.  Officer Bunn even denied that Brown had consumed alcohol or drugs.

Through this and other evidence, Brown has demonstrated that a reasonable jury

could find that the officers acted with deliberate indifference in failing to inform EMS,

MUSC, and Detention Center physicians of Brown's serious medical needs.  See Scarbro,

374 F. App'x at 372 (finding plaintiff stated claim under § 1983 for withholding

information where the officer "misrepresented critical medical information that was

specifically asked for by medical personnel").

The court also denies summary judgment on the basis of qualified immunity.

Under the doctrine of qualified immunity, law enforcement officers performing

discretionary duties "are shielded from liability for civil damages insofar as their conduct

does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court laid out a two-step process

for resolving a qualified immunity claim by a government official.  First, the court must

decide whether the facts, "[t]aken in the light most favorable to the party asserting the

injury," make out a violation of a constitutional right.  Id. at 201.  Second, the court must

decide whether the right at issue was "clearly established" at the time of the defendant's

alleged misconduct.  Id.

Taking the evidence in the light most favorable to Brown, there are triable issues of fact regarding whether the officers were deliberately indifferent to Brown's serious medical needs. Brown's rights in this regard were "clearly established" at the time of the alleged misconduct. See Estelle, 429 U.S. 97 (recognizing federal cause of action for deliberate indifference to serious medical needs). For these reasons, the court denies summary judgment on the basis of qualified immunity.

### 2. Conspiracy Under § 1985(3) (Counts Five and Eleven)

Next, the officers move for summary judgment on Counts Five and Eleven of plaintiff's amended complaint, which are for conspiracy to interfere with civil rights under § 1985(3).

In his amended complaint, plaintiff alleges that Officers Kursch, Bunn, and Moore "each took one or more overt acts in furtherance of their joint action together among themselves for the purpose of depriving Mr. Brown of adequate medical care at MUSC and at the Charleston County Detention Center by their inaction, withholding information, and mischaracterizing information." Am. Compl. ¶ 201. Furthermore, Brown alleges that Officers Bunn and Moore "were aware that Mr. Brown's condition when he arrived at the Detention Center was worse than it had been when Mr. Brown was arrested," and "collaborated to provide the Detention Center personnel misinformation about Mr. Brown, including that he had 'fallen' while running, and that his injuries were not genuine." Id. ¶ 264.

To establish a violation of § 1985(3), a plaintiff must prove "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of equal enjoyment of rights secured by

14

the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy."  Unus v. Kane, 565 F.3d 103, 126 (4th Cir. 2009).  "[T]he law is well settled that to prove a section 1985 'conspiracy,' a claimant must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights."  Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995).  "[M]erely conclusory allegations of conspiracy, unsupported by a factual showing of participation in a joint plan of action, are insufficient to support a section 1985(3) action against a motion for summary judgment."  Id. at 1376.

Absent from the amended complaint is any allegation that the purported conspirators were motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus."  Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268 (1993).  For this reason, the court grants summary judgment to defendants on plaintiff's conspiracy claims.

### 3.  Neglect to Prevent Under § 1986 (Counts Six and Seven)

42 U.S.C. § 1986 provides a cause of action against any party with knowledge of a § 1985 conspiracy who fails to take action to prevent the civil rights violation.  Plaintiff brings § 1986 claims against the officers for failure to prevent each other's misrepresentations to medical personnel when they knew what the other officers were saying was false.  See, e.g., Am. Compl. ¶ 209 ("Each of defendants Kursch, Moore, and Bunn had the power to prevent the concealment of the actual circumstances attending Mr. Brown's arrest by himself making that disclosure, and by so doing prevent Mr. Brown from being deprived of his rights to adequate medical care, and prevent him from the injuries during the delay.").

"A cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985." Trerice v. Simmons, 755 F.2d 1081, 1085 (4th Cir. 1985). Because plaintiff's conspiracy claims fail, so too do his § 1986 claims. The court grants summary judgment to defendants on these claims.

### 4. Liability Under the Tort Claims Act (Count Eight)

Finally, plaintiff brings state law claims against the City, seeking to hold it responsible for the "grossly negligent" conduct of its employees. Am. Compl. ¶ 227. Plaintiff alleges that the "City of Charleston was grossly negligent in not properly training and supervising city police officers sufficient to cause them to properly disclose the facts needed to deliver proper medical care to Mr. Brown when he was with EMS and at MUSC on February 1, or to properly disclose the facts needed to evaluate Mr. Brown's deteriorated medical condition when Mr. Brown arrived from MUSC to the Detention Center on February 1." Id. ¶ 228.

The City asserts a defense under S.C. Code Ann. § 15-78-60(25), which provides that there can be no liability for "responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any . . . patient, prisoner, [or] inmate, . . . except when the responsibility or duty is exercised in a grossly negligent manner." The City contends there is no evidence that any of its employees committed gross negligence.

"Gross negligence is the intentional, conscious failure to do something which one ought to do or the doing of something which one ought not to do. It is the failure to exercise slight care." Hendricks v. Clemson Univ., 529 S.E.2d 293, 297 (S.C. Ct. App. 2000); see also Doe v. Greenville Cnty. Sch. Dist., 651 S.E.2d 305, 309 (S.C. 2007).

16

Viewed in the light most favorable to Brown, there is evidence that the officers failed to exercise slight care for plaintiff's serious medical needs.  For instance, Brown presents evidence that the officers knew he had complained that he could not feel his legs after being subjected to a knee strike, yet the officers misrepresented to physicians that Brown had simply "collapsed" and suffered "no trauma."  For this reason, the court denies summary judgment on plaintiff's state law claims against the City.

### B.  MUSC Defendants' Motion for Summary Judgment

Plaintiff asserts three causes of actions against the MUSC defendants.  Counts Ten and Twelve are for deliberate indifference under § 1983 against MUSC and Dr. Bush.  Count Thirteen is for medical malpractice under state law against MUSC.

### 1.  Deliberate Indifference Under § 1983 (Counts Ten and Twelve)

Brown alleges that Dr. Bush "subjectively knew Mr. Brown's medical condition was serious and that Mr. Brown needed medical attention."  Am. Compl. ¶ 243.  However, "[Dr.] Bush was deliberately indifferent to Mr. Brown's known serious medical needs in light of Mr. Brown arriving in full C-spine precautions with a history that included loss of consciousness.  No diagnostic exploration was done for Mr. Brown to assess his cervical spine before he was removed from C-spine precautions."  Id. ¶ 245.  "Before Mr. Brown left MUSC, while he was under the care of [Dr.] Bush, Mr. Brown reported losing the use of, and feeling in, his legs.  Nothing was done to pursue that changed condition of Mr. Brown's."  Id. ¶ 245.  Instead, "Mr. Brown was 'cleared for jail' with an inaccurate, and misleading, medical record."  Id. ¶ 295.

It is undisputed that Brown was cleared from C-Spine precautions while under Dr. Bush's care.  Defs.' Mem. Supp. Mot. Summ. J., ECF No. 105-1 at 3.  Plaintiff's expert

17

Dr. Coule opines that Dr. Bush did not meet his standard of care because he failed to diagnose plaintiff's spinal cord injury.  Instead, Dr. Bush "clear[ed] Mr. Brown from full spinal precautions without first obtaining radiographic imaging of his cervical spine."  Pl.'s Resp. Opp'n, ECF No. 115 at 2.

Proof of negligence or even malpractice is insufficient to support a claim under § 1983.  Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986) (citing Estelle, 429 U.S. at 106).  Defendants analogize this case to Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998), in which the Fourth Circuit affirmed the district court's entry of summary judgment on plaintiff's medical indifference claim against the defendant doctors.  The plaintiff in Johnson alleged that the defendants failed to diagnose and treat his pituitary tumor which later caused the plaintiff to go blind.  Id. at 168.  The Fourth Circuit held that plaintiff's medical indifference claim failed as a matter of law because the plaintiff "produced no evidence that the doctors *subjectively knew* about the pituitary tumor and deliberately failed to treat it."  Id. (emphasis added).  At best, the case demonstrated that the doctors were negligent, but negligence is not cognizable under § 1983.  Id.

From the court's review of the evidence, plaintiff has, at best, a claim for negligence or malpractice against the MUSC defendants, but not one for deliberate indifference.  Plaintiff offers evidence that Dr. Bush misdiagnosed Brown's spinal cord injury.  A misdiagnosis means that Dr. Bush was not subjectively aware of Brown's serious condition.  See Bush Dep. 39:22-25 ("Q:  Did you ever observe any problems with [Brown's] ability to use his lower extremities?  A:  I did not.); Johnson, 145 F.3d at 168 (question is whether doctor subjectively knows of the "serious medical condition itself, not the symptoms of the serious medical condition").

Plaintiff relies on <u>Brown v. Mitchell</u>, 327 F. Supp. 2d 615 (E.D. Va. 2004), in which the district court found that viewing the facts in the light most favorable to the plaintiff, the record showed the defendant doctor was "confronted with facts pointing to a serious medical condition."  <u>Id.</u> at 657.  In addition, the court found it "important[]" that the doctor "drew the inference that serious medical conditions did in fact exist" from the plaintiff's symptoms.  <u>Id.</u>  Here, unlike in <u>Brown</u>, there is no evidence that Dr. Bush "drew the inference" that Brown had suffered a spinal injury.  Accordingly, the court grants summary judgment to the MUSC defendants on plaintiff's deliberate indifference claim.

### 2.  Medical Malpractice (Count Thirteen)

Plaintiff also brings a claim against MUSC for Dr. Bush's alleged "medical malpractice in failing to properly diagnose and treat three vertebral body fractures and a spinal cord injury."  Pl.'s Resp. Opp'n, ECF No. 115 at 2; Am. Compl. ¶ 306.

Defendants move for summary judgment on the basis that plaintiff cannot demonstrate causation between the allegedly wrongful actions and plaintiff's injuries. Defendants contend that expert testimony is necessary to establish that MUSC proximately caused plaintiff's paralysis, but that plaintiff's expert, Dr. Coule, fails to provide the requisite testimony.

Under South Carolina law, "A physician commits medical malpractice by not exercising the degree of skill and learning that is ordinarily possessed and exercised by members of the profession in good standing acting in the same or similar circumstances." <u>David v. McLeod Reg'l Med. Ctr.</u>, 626 S.E.2d 1, 3 (S.C. 2006).  In <u>Green v. Lilliewood</u>, 249 S.E.2d 910 (S.C. 1978), the South Carolina Supreme Court held that unless the

subject is a matter of common knowledge, expert testimony is required to establish that a

defendant failed to conform to a required standard of care in a medical malpractice case.

Id. at 913; see also Kemmerlin v. Wingate, 261 S.E.2d 50, 51 (S.C. 1979).

Here, Brown has presented evidence that Dr. Bush failed to meet the standard of

care by misdiagnosing Brown's serious spinal injuries and failing to perform standard

procedures that likely would have disclosed the injuries.  In addition, Dr. Coule opines it

was likely that Mr. Brown's spinal injury would have been recognized had the

appropriate neurological exams and/or imaging studies to rule out a spinal injury been

performed.  See Rule 26 Report, ECF No. 115-2.

Dr. Coule admitted that he could not pinpoint the precise detrimental effect of Dr.

Bush's allegedly negligent treatment.  See Dr. Coule Dep. 154:11-17 ("[T]he failure to

keep him immobilized and to provide adequate care for him certainly resulted in a lack of

optimal care that resulted in a worse outcome.  That worse outcome – to what degree that

outcome is worse, I can't testify.").  In Howle v. Florence Neurosurgery & Spine, PC,

No. 05-cv-3545, 2007 WL 1656233 (D.S.C. June 7, 2007), a medical malpractice suit

involving a neurosurgeon whose treatment allegedly resulted in the plaintiff's paralysis

and death, the district court denied the defendant's motion for summary judgment even

though the plaintiff's expert could not quantify the amount of harm caused by the

doctor's delay in providing treatment.  The court wrote, "While the expert cannot

quantify the *extent* of her paralysis had she received the care, he clearly indicates that

most probably the alleged breach of duty more likely than not hastened her death due to

complications from her paralysis."  Id. at *1.  Similarly here, Dr. Coule opines that Dr.

Bush's alleged breach of duty likely caused or worsened Brown's paralysis.  The court

finds that plaintiff has demonstrated genuine issues of material fact regarding whether Dr.

Bush breached the standard of care and whether this breach caused or worsened Brown's

paraplegia.  Therefore, the court denies summary judgment on plaintiff's claim for

medical malpractice.

### C.  Charleston County Defendants' Motion for Summary Judgment

Plaintiff brings three claims against the Charleston County defendants.  Count

Three is for deliberate indifference under § 1983 against Gregg Thomas.  Count Eight is

for liability under the South Carolina Tort Claims Act against Sheriff Cannon.  Count

Eleven is for conspiring to interfere with civil rights against Sheriff Cannon.

In their motion for summary judgment, the Charleston County defendants state

that once Brown arrived at the Detention Center, he was removed from the police cruiser

and brought into the Detention Center.  At that time, defendant Thomas was assigned to

process intake paperwork for plaintiff.  Defendants allege that Thomas "is not a nurse,

doctor or EMT."  Defs.' Mem. Supp. Mot. Summ. J., ECF No. 106-1 at 2.  Thomas

completed a medical screening form on his computer while seated behind the counter and

away from Brown, Nurse Phillips, and the police officers.  Id. at 3.

### 1.  Deliberate Indifference Under § 1983 (Count Three)

First, Brown argues that Thomas acted with deliberate indifference in failing to

provide adequate medical care.  Defendants respond that Thomas "is not a medical

professional, and is not qualified to make any medical assessments."  Id. at 4.

Deliberate indifference requires a showing that the defendants actually knew of

and disregarded a substantial risk of serious injury to the detainee or that they actually

knew of and ignored a detainee's serious need for medical care.  Farmer, 511 U.S. at 834-

21

35; <u>Parrish v. Cleveland</u>, 373 F. 3d 294, 302 (4th Cir. 2004). Here, plaintiff has not shown that Thomas was ever aware of plaintiff's inability to feel or move his legs. Instead, the evidence shows that Thomas was removed from the situation and filled out a basic intake form on his computer. Because plaintiff has not shown that Thomas made any medical decisions or that he knew of and disregarded a serious medical need, the court grants summary judgment to Thomas on plaintiff's claim for deliberate indifference.

Plaintiff additionally alleges that Sheriff Cannon acted with deliberate indifference in failing to train personnel to provide adequate medical care. Plaintiff has failed to set forth evidence to support his position other than conclusory allegations in his amended complaint. Therefore, the court grants summary judgment to Sheriff Cannon on plaintiff's claim for deliberate indifference.

### 2. Liability Under the Tort Claims Act (Count Eight)

Second, plaintiff alleges that Sheriff Cannon was grossly negligent in not properly training and supervising Detention Center personnel to assess and accept persons such as Brown for confinement at the Detention Center. Am. Compl. ¶¶ 227, 229. Defendants assert that Sheriff Cannon cannot be held liable under the South Carolina Tort Claims Act because Brown has not set forth evidence of gross negligence. Plaintiff cites no reason why Thomas—a processing officer at the Detention Center—should have been taught by Sheriff Cannon to assess plaintiff's physical condition as would a doctor, rather than as would a secretary or other front desk employee. The court grants summary judgment to Sheriff Cannon on plaintiff's state law claims.

### 3.   Conspiracy Under § 1985(3) (Count Eleven)

Last, Brown brings a claim against Sheriff Cannon for conspiracy to interfere with civil rights.  For the reasons set forth supra Section III.A.2, the court grants summary judgment on plaintiff's conspiracy claim.

### D.  Nurse Phillips's Motion for Summary Judgment

Plaintiff brings two causes of action against Nurse Phillips.  Count Four is for deliberate indifference under § 1983.  Count Eleven is for conspiracy to interfere with civil rights under § 1985(3).

### 1.   Deliberate Indifference Under § 1983 (Count Four)

In support of his § 1983 claim against Nurse Phillips, plaintiff alleges that Nurse Phillips stated he was "okay for acceptance" once Brown arrived at the Detention Center. Am. Compl. ¶ 183.  Brown repeated to Nurse Phillips that he couldn't feel his legs or walk, but these comments were ignored.  Id. ¶¶ 186-87.  Before Brown was placed in a holding cell, he was evaluated by Nurse Phillips and again informed her that he could not feel his legs.  Id. ¶ 191.  Brown contends that Nurse Phillips's deliberate indifference to his serious medical needs resulted in a delay in proper medical care that contributed to his paralysis.  Id. ¶ 197.

Nurse Phillips was the first Detention Center employee to make contact with Brown by talking with him in the police cruiser.  She claims that she relied upon MUSC's clearance and the intake was out of her hands:  "Once [a] detainee has been cleared for jail by the emergency room physician, there is nothing more she can do, and she must accept them."  Def.'s Mem. Supp. Mot. Summ. J., ECF No. 111-3 at 3. Furthermore, she argues there is no evidence that she had the requisite knowledge of

23

Brown's serious medical needs because she "did not observe [Brown] stand, walk, or move his legs." Id. at 7.

Nurse Phillips fails to paint a complete picture of the events that transpired during Brown's stay at the Detention Center. First, when Brown arrived, a video recording captured Brown repeatedly pleading to Nurse Phillips and one of the officers that he could not feel or move his legs. Next, Nurse Phillips assessed Brown once he was through intake and booking. Her conversation with Brown, again recorded, shows Nurse Phillips asking, "What happened to your legs?" and "When did you lose feeling in your legs?" These questions demonstrate Nurse Phillips's awareness of plaintiff's serious medical needs. Next, instead of calling for treatment or asking whether Brown should be taken back to MUSC, Nurse Phillips checked Brown again and stated his vital signs and overall lucid actions revealed he did not need to go to the medical unit.[5] Brown was "wheeled to holding cell 1618 and placed in the room without further incident," and without observation. Brown alleges that by being placed in a cell without observation, his paralysis and fecal incontinence went untreated overnight. The Detention Center videotape shows Brown being tipped from his wheelchair and left on the floor of his holding cell. Pl.'s Resp. Opp'n, ECF No. 143 at 8.

In her deposition, Nurse Phillips admitted that when a detainee arrives at the Detention Center and is paralyzed, she should "speak to the doctor, and get the order, and go from there, do what the doctor tells you to do." Phillips Dep. 48:1-3. Nurse Phillips

---

[5] In response to interrogatories, Nurse Phillips admitted that although she "accepted the assessment and evaluation from MUSC upon accepting the Plaintiff into the Detention Center, "[t]hereafter she *made her own assessment and evaluation*." ECF No. 143-2 at 2 (emphasis added). In other words, she was not totally dependent upon the analysis by MUSC of Brown's condition.

also agreed it was "obvious" that Brown's condition when he arrived at the Detention Center was not consistent with what was shown on MUSC's "Clear for Jail" form.  Id. at 87:24-88:5.  Yet, Nurse Phillips did not alert any doctors about Brown's condition and approved him to be placed on the floor of a jail cell without observation.

Viewing the evidence in the light most favorable to Brown, a reasonable jury could find that Nurse Phillips was deliberately indifferent to Brown's medical needs. Furthermore, Nurse Phillips had not shown entitlement to qualified immunity.  Brown has set forth genuine issues of material fact regarding whether Nurse Phillips was deliberately indifferent to Brown's serious medical needs which were clearly established at the time of the alleged misconduct.  Therefore, the court denies summary judgment.

## 2.   Conspiracy § 1985(3) (Count Eleven)

Second, Brown brings a claim against Nurse Phillips for conspiracy to interfere with civil rights.  For the reasons set forth supra Section III.A.2, the court grants summary judgment on plaintiff's conspiracy claim.

## IV.   CONCLUSION

Based on the foregoing, the court **GRANTS IN PART AND DENIES IN PART** the City of Charleston defendants' motion for summary judgment; **GRANTS IN PART AND DENIES IN PART** the MUSC defendants' motion for summary judgment; **GRANTS** the Charleston County defendants' motion for summary judgment; and **GRANTS IN PART AND DENIES IN PART** Nurse Phillips's motion for summary judgment.  The court grants summary judgment to defendants on Counts Three, Five, Six, Seven, Eight (as to Sheriff Cannon but not as to the City), Ten, Eleven, and Twelve, but denies summary judgment as to the remaining counts of plaintiff's amended complaint.

25

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 20, 2013**
**Charleston, South Carolina**